**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**COUNTY OF CLINTON et al.,**

                Appellants,           8:12-cv-1636
                                                          (GLS)

      v.

**WAREHOUSE AT VAN BUREN**
**STREET, INC.,**

                Appellee.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE APPELLANTS:** | |
| Maynard, O'Connor Law Firm | ROBERT A. RAUSCH, ESQ. |
| 6 Tower Place | |
| Albany, NY 12203 | |
| **FOR THE APPELLEE:** | |
| Nolan, Heller Law Firm | BRENDAN J. CAROSI, ESQ. |
| 39 North Pearl Street | |
| Albany, NY 12203 | |

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Appellants County of Clinton and Joseph W. Giroux, as the Clinton County Treasurer, (collectively "Clinton"), appeal from an order of the Bankruptcy Court (Littlefield, C.J.), filed October 18, 2012, which denied Clinton's motion for summary judgment, and granted appellee Warehouse

at Van Buren Street, Inc.'s cross-motion for summary judgment. For the reasons that follow, Bankruptcy Court's order is affirmed.

## II. Background

To avoid redundancy, the facts recited in the court's prior Memorandum-Decision and Order are incorporated herein. (*See* Dkt. No. 12.) By way of background, in November 2012, Clinton unsuccessfully sought a stay of Bankruptcy Court's order that required, among other things, that a certain piece of real property ("the Meridian Road Property") be reconveyed to Warehouse by virtue of 11 U.S.C. § 548. (*See generally* Dkt. No. 12.)

## III. Standard of Review

District courts have jurisdiction to hear both interlocutory and final appeals from orders of the bankruptcy court. *See* 28 U.S.C. § 158(a). In exercising its appellate jurisdiction, the district court distinguishes between findings of fact and conclusions of law; reviewing the former under the "clear error" standard, and the latter *de novo*. *R² Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns, Inc.)*, 691 F.3d 476, 483 (2d Cir. 2012); *see United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support

it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). Where a finding is mixed—*i.e.*, it contains both conclusions of law and factual findings—the *de novo* standard applies. *See Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994). After applying these standards to the questions of law and fact, the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

## IV.  Discussion

Clinton urges the court to reverse Bankruptcy Court's order on two grounds.  First, Clinton contends that the transfer of the Meridian Road Property to Clinton County following Warehouse's default in an in rem foreclosure proceeding "does not constitute a 'fraudulent conveyance' avoidable under [11 U.S.C. § 548]."  (Dkt. No. 4 at 11-20.)  Second, Clinton asserts that, because Warehouse defaulted before filing its bankruptcy petition, the Meridian Road Property is not part of the bankruptcy estate, and, accordingly, Warehouse is without "standing to challenge the transfer in Bankruptcy Court."  (*Id.* at 21-23.)  Because "standing imports justiciability," it is a threshold question that must be addressed before

3

considering the merits of this appeal. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Accordingly, the court first considers that issue.

### A. Standing

Fleshing out its argument that Warehouse lacks standing, Clinton claims that, because Warehouse lost all right to the Meridian Road Property four months in advance of filing its Chapter 11 petition, the property was not part of the bankruptcy estate at the outset of the bankruptcy proceeding. (*See* Dkt. No. 4 at 21-23.) It follows, contends Clinton, that Warehouse lacked standing to commence an adversary proceeding regarding property that was not part of the bankruptcy estate. (*See id.*) The court disagrees with Clinton's circular argument.

Here, the Meridian Road Property was not property of the estate at the inception of the Chapter 11 bankruptcy because Warehouse no longer had an interest in it by virtue of its default, *see* 11 U.S.C. § 541; *Johnson v. Cnty. of Chautauqua (In re Johnson)*, 449 B.R. 7, 10 (W.D.N.Y. 2011) (citing *Wisotzke v. Ontario Cnty.*, 382 F. App'x 99, 100 (2d Cir. 2010)); (Dkt. No. 15 at 32-33.) To conclude that Warehouse lacks standing because of that fact, however, is to put the cart before the horse. Specifically, section 541(a)(3) includes as part of the bankruptcy estate

4

"[a]ny interest in property that the trustee recovers under section . . . 550." Section 550, in turn, permits a trustee to avoid a transfer of property for, among other things, "[f]raudulent transfers and obligations" under section 548, at issue below.  Moreover, a debtor in possession, such as Warehouse, has all the rights of a trustee.  *See* 11 U.S.C. §§ 1101(1), 1107(a).  The amalgamation of the foregoing demonstrates that property recovered by a trustee—or, as is the case here, a debtor in possession—pursuant to section 548 "is not to be considered property of the estate until it is recovered."  *Fed. Deposit Ins. Corp. v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992).  Accordingly, it would be illogical to hold that a debtor in possession lacks standing to set aside a fraudulent conveyance because the property—which it could not include in the bankruptcy estate when the Chapter 11 petition was filed— was not originally part of the bankruptcy estate.  To hold otherwise would foreclose either a trustee or debtor in possession from relying on section 548.

    **B.**    <u>**Section 548**</u>

Moving on to the merits, Clinton argues that Congress simply could not have intended for a valid tax foreclosure proceeding to fall within the

5

scope of a "fraudulent transfer" under section 548.  (*See* Dkt. No. 4 at 11-20.)  It further claims that, if Bankruptcy Court's ruling is extended to other cases, such a rule "would <u>always</u> result in real property tax foreclosures [being] set aside" because "[i]nvariably, there will *always* be a significant disparity between the amount of taxes due and [the] value of the property itself."  (*Id.* at 12-13, 16.)  Moreover, Clinton contends that: despite the fact that the statute is disjunctive, the intent element embodied by section 548(a)(1)(A), which concerns actual fraud, should nonetheless be considered when analyzing this case under (a)(1)(B), which concerns constructive fraud; permitting a judgment of foreclosure to be vacated by virtue of section 548 impinges on the County's ability to conduct tax foreclosure proceedings; and, finally, the court should consider the fact that Warehouse took no steps to protect itself even though its owner was well aware of the imminence of foreclosure.  (*See id.* at 13-14, 15-18, 18-20.)

Section 548, titled "Fraudulent transfers and obligations,"[1] permits a

---

[1] As Warehouse argues, (*see* Dkt. No. 17 at 8 n.1), the malfeasance requirement suggested by the statute's heading cannot alter "'that which the [statute's] text makes plain.'"  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (quoting *Bhd. of R.R. Trainmen v. Balt. & O.R. Co.*, 331 U.S. 519, 529 (1947)).

6

trustee[2] to avoid transfers of an interest in property within two years of the date on which the petition was filed under certain circumstances. In particular, as relevant here, the statute provides:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within [two] years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C. § 548. An issue closely related to the instant one was addressed by the Supreme Court of the United States in *BFP v. Resolution Trust Corporation*, 511 U.S. 531 (1994). In *BFP*, the Court held that, as a matter of law, *mortgage foreclosure* sales result in "reasonably equivalent value" where the state's foreclosure law is followed, and, thus, section 548 cannot be used to avoid a transfer that follows a mortgage foreclosure.

---

[2] Pursuant to 11 U.S.C. § 1107(a), a debtor in possession has all the rights of a trustee.

*See id.* at 545. The Court specifically reserved on extending its holding to "other foreclosures and forced sales (to satisfy tax liens, for example)." *Id.* at 537 n.3.

Bankruptcy courts have addressed one of the questions that went unresolved by *BFP*, with some extending that holding to tax foreclosures, *see, e.g.*, *Fisher v. Moon (In re Fisher)*, 355 B.R. 20 (Bankr. W.D. Mich. 2006); *Comis v. Bromka (In re Comis)*, 181 B.R. 145 (Bankr. N.D.N.Y. 1994), and others refusing to do so on the premise that, under New York law, there are substantial differences between mortgage and in rem tax foreclosures that distinguish the two and justify their different treatment, *see, e.g.*, *Herkimer Forest Prods. Corp. v. County of Clinton (In re Herkimer Prods. Corp.)*, Bankruptcy No. 04-13978, Adversary No. 04-90148, 2005 WL 6237559, at *3-4 (Bankr. N.D.N.Y. July 26, 2005); *Balaber-Strauss v. Town of Harrison (In re Murphy)*, 331 B.R. 107, 119-21 (Bankr. S.D.N.Y. 2005); *Harris v. Penesi (In re Harris)*, No. 01-10365, 2003 WL 25795591, at *5 (Bankr. N.D.N.Y. Mar. 11, 2003).

On its face, the Bankruptcy Code plainly allows for "any transfer"[3]

---

[3] Foreclosure of a tax lien falls squarely within the definition of "transfer" under the Bankruptcy Code. 11 U.S.C. § 101(54).

within two years before the filing of a bankruptcy petition to be avoided if the debtor voluntarily or involuntarily "received less than a reasonably equivalent value in exchange for such transfer," and one of the further requirements of (B)(ii) is met, which, as relevant here, includes the debtor's insolvency as of a particular time.  11 U.S.C. § 548(a)(1)(B); (Dkt. No. 9 at 14-15.)  Notably, the intent of the debtor is irrelevant if avoidance is premised upon section 548(a)(1)(B).[4]  *See Balaber-Strauss*, 331 B.R. at 136 ("A claim of constructive fraud [under section 548(a)(1)(B)] does not require misconduct or bad intent . . . .").

Here, it is undisputed that transfer of the Meridian Road Property occurred without any active involvement of Warehouse, and, as such, the transfer, which followed default judgment, could not have been motivated by an "intent to hinder, delay, or defraud" under 11 U.S.C. § 548(a)(1)(A). Moreover, the parties agree that the outstanding tax debt owed by Warehouse was approximately $29,000, while the bid at auction later the

---

[4] Accordingly, Clinton's arguments that intent and Warehouse's conduct should be considered are unpersuasive, (*see* Dkt. No. 4 at 13-14), as is its assertion that section 548(a)(1)(A) is rendered meaningless or without purpose, (*see id.* at 14).  Indeed, aside from foreclosures, the clause referencing intent may validly serve as a means for avoiding a transfer of property, without consideration of reasonably equivalent value.

same day that the Chapter 11 petition was filed was $120,000, and that Warehouse was insolvent at the relevant time.  (*See* Dkt. No. 1 ¶¶ 8, 20; Dkt. No. 9 at 14-17.)

The court finds none of Clinton's arguments persuasive.  In general, the arguments—that Congress could not have intended a transfer following a tax foreclosure to be "fraudulent"; intent should be considered with respect to section 548(a)(1)(B) even though no such requirement is articulated; and the related argument that Warehouse's conduct is relevant, (*see* Dkt. No. 4 at 11-20)—run contrary to the express language of the statute.  And, in particular, Clinton's assertion that permitting avoidance of a transfer that flows from a tax foreclosure impermissibly interferes with the County's ability to conduct tax foreclosure proceedings, (*see* Dkt. No. 4 at 15-18), is unavailing.  The rationale of *BFP*—that state interests in ensuring security in the titles to real estate supported a conclusive presumption that reasonably equivalent value is always the price received at the mortgage foreclosure sale, *see* 511 U.S. at 544-45; *see also Comis*, 181 B.R. at 150—does not, in the view of this court, apply to tax lien foreclosures.  As the *Herkimer*, *Balaber-Strauss*, and *Harris* courts reasoned, "the 'amount of a tax lien is no evidence whatsoever of

10

the property's value' and, thus, there [can] be no presumption that the debtor received reasonably equivalent value" as in the *BPF* mortgage foreclosure scenario.  *Herkimer*, 2005 WL 6237559, at *3 (quoting *Wentworth v. Town of Acton, ME (In re Wentworth)*, 221 B.R. 316, 320 (Bankr. D. Conn. 1998)); *see Balaber-Strauss*, 331 B.R. at 118-19; *Harris*, 2003 WL 25795591, at *5.[5]  This interpretation does not dictate a perennially adverse result for the taxing district because the factual question regarding reasonably equivalent value will remain for the bankruptcy court's resolution.

    Having resolved the legal question that section 548(a)(1)(B) applies to in rem tax foreclosures conducted pursuant to New York's Real Property and Tax Law, and finding no clear error in Bankruptcy Court's factual finding that reasonably equivalent value was not received by Warehouse in this case, (*see* Dkt. No. 9 at 16), the court affirms.

---

[5] Moreover, the state interest must be balanced against "the Bankruptcy Code's strong policy favoring equal treatment of creditors." *N.Y. State Elec. & Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93, 97 (2d Cir. 1997).  Avoidance under section 548 brings the property into the bankruptcy estate and makes it available for the benefit of all creditors as opposed to permitting a taxing district, like Clinton, to be enriched to the detriment of other creditors following the sale of a foreclosed upon property.  *See* 11 U.S.C. § 541(a)(3).

11

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the October 18, 2012 order of Bankruptcy Court is **AFFIRMED**; and it is further

**ORDERED** that the clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 15, 2013
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court